UNITED STATES of America,
Plaintiff–Appellee,

v.

Marcia D. GUY, Defendant–Appellant.

No. 98–3645.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 12, 1999.

Decided April 5, 1999.

· Amy St. Eve (argued), Office of the United States Attorney, Criminal Appellate Division, Chicago, IL, for Plaintiff–Appellee.

James A. Graham (argued), Chicago, IL, for Defendant–Appellant.

Before FLAUM, EASTERBROOK and MANION, Circuit Judges.

FLAUM, Circuit Judge.

Marcia D. Guy pled guilty to one count of bank fraud in violation of 18 U.S.C. sec. 1344. Although the presentence report indicated that she was eligible for up to thirty years imprisonment, it recommended ten to sixteen months. On October 15, 1998, she was sentenced to five months imprisonment at the Salvation Army Community Confinement Center, to be followed by five years of supervised release. Guy's sentence mandated that the first five months of supervised release be served in home confinement with electronic monitoring. The district court also ordered Guy to submit to drug testing as directed by the Probation Office for the pendency of supervised release. She appeals the district court's decision not to depart downward from the sentencing guidelines because of her family circumstances, and also argues that, because she has no history of past narcotics use, the imposition of drug testing was inappropriate. For the reasons that follow, we affirm the defendant's sentence.

## FACTS

From 1993–1995, the defendant was an employee of AT & T Teletype, a financial institution in Illinois. She provided her employer with fraudulent information in order to open three credit card accounts, increase the credit limits on her existing credit card, and do the same on her sister's credit card. She also used her position at the company to allow herself and her sister to obtain cash advances on these unauthorized accounts. As a result of Guy's actions, her employer suffered a loss of over $33,000. After her activities were uncovered, an information was filed against Ms. Guy, and she pled guilty to one count of bank fraud. The district court sentenced her as noted above, and she initiated this appeal.

## ANALYSIS

### A.

The appellant's first argument is that the district court erred by denying her motion for a downward departure for "extraordinary family circumstances." Section 5H1.6 of the Sentencing Guidelines states that "family ties and responsibilities ... are not ordinarily relevant in determining ... a [defendant's] sentence." U.S.S.G. § 5H1.6. This circuit has recognized that family circumstances "so unusual that they may be characterized as extraordinary," empower a district court to depart downward from an applicable sentencing guidelines range. *United States v. Canoy*, 38 F.3d 893, 906 (7th Cir.1994). *Canoy* also recognized, however, that "disintegration of existing family life is insufficient to warrant a departure, as that is to be expected when a family member engages in criminal activity that results in incarceration." *Id.* The defendant here requested a downward departure based on the facts that she had a one and a half year-old child, and, at the time of sentencing was eight months pregnant. She also cared for two step-children, ages seven and five.

On appeal, she argues that the court below failed to take into account all of the "relevant circumstances" of her family situation. Our review of the record leads us

to conclude otherwise. The district court acknowledged that sentencing Ms. Guy to prison would impose hardship on her family because of her "numerosity of responsibilities," but he also noted that he would "hate ... [to see a situation] where a person could steal with relative impunity and not expect incarceration simply because they come from a large family, or have responsibilities for a large family."

 If a defendant argues that the sentence was imposed in violation of the law or as a result of an incorrect application of the Guidelines, our review is de novo. *United States v. Sewell,* 159 F.3d 275, 279 (7th Cir.1998). However, a trial court's discretionary decision not to depart from the guidelines is unreviewable. *United States v. Madoch,* 149 F.3d 596, 602 (7th Cir.1998). Relying on *United States v. Owens,* the defendant asks us to review Judge Lindberg's decision under the abuse of discretion standard. 145 F.3d 923, 928 (7th Cir.1998). However, *Owens* dealt with a district court's decision to affirmatively exercise its discretion and grant an extraordinary family circumstances downward departure. When this discretion is actually used "we review the district court's decision to depart from the guidelines for an abuse of discretion." *Id.* (citation omitted). Because here no such decision was made, *Owens* is inapposite.

It is clear from the trial court's above referenced statement and the transcript as a whole that Judge Lindberg understood that he had the power to order a downward departure if the facts warranted it, and that he considered all of the issues that the defendant thought relevant. Because Guy has no legal challenge to the district court's interpretation of the Guidelines, as we held in an identical situation in *Madoch,* "[n]othing is left that is proper for appellate intervention." 149 F.3d at 602.

**B.**

Next, Ms. Guy argues that the district court erred by choosing not to suspend the drug testing provisions required when a defendant is placed on supervised release. 18 U.S.C. § 3583(d) provides that a district court shall order "as an explicit condition of supervised release, that the defendant shall refrain from any unlawful use of a controlled substance and submit to a drug test within 15 days of release on supervised release and at least 2 periodic drug tests thereafter." If the court chooses, it may "ameliorate or suspend" the testing conditions if the defendant's presentence report or "other reliable sentencing information indicates a low risk of future abuse by the defendant." 18 U.S.C. § 3563(a)(5). The defendant argues that the district court should have exercised this power because she had never used narcotics in the past, her screening test turned up negative for all illicit drugs, and thus she met the profile of having a very low risk for future drug abuse.

 Because Guy did not raise this issue at sentencing we review the district court's decision for plain error. *Sewell,* 159 F.3d at 279. A plain error "is not only a clear error but an error [so great] ... that failure to correct it could result in a miscarriage of justice." *United States v. Wallace,* 32 F.3d 1171, 1174 (7th Cir.1994). The great deference given to the district court is magnified by § 3563(a), which provides the sentencing judge with "broad discretion in imposing special conditions of supervised release .... [the sentencing court] may order a variety of discretionary conditions of supervised release." *United States v. Schechter,* 13 F.3d 1117, 1118 (7th Cir.1994). Such deference is granted because the statute's plain language says that the mandatory drug testing requirements "may be ameliorated or suspended" if a defendant is a low risk for using drugs. This language is hortatory, rather than obligatory, and vests the district court with wide decisional latitude. If Congress wanted to grant low-risk defendants automatic exemptions from drug testing, it could have written § 3563(a)(5) to read

that the testing requirement "shall" or "must" be "ameliorated or suspended" if the defendant is a low risk for future substance abuse. It did not, however. Thus, while it might have been appropriate for a district court to grant the defendant the relief she seeks, under our standard of review, it was not plain error for the district court to impose the initial drug testing. *See United States v. Carter,* 159 F.3d 397, 400 (9th Cir.1998) (decision not to suspend mandatory drug testing requirements even when defendant had no history of prior drug use not abuse of discretion).

### C.

Finally, Guy appeals the district court's decision to order her to submit to "random drug tests as ordered by the Probation Office, not to exceed 104 tests per year." The district court was entitled to do so under § 3583(d), which allows "at least two" drug tests for defendants on supervised release, and sets no maximum. The defendant argues that the district court erred in requiring her to submit to so many tests. Like the issue discussed in Section B, *supra,* the defendant did not raise this issue at trial, and thus we review for plain error.[1]

Although the district court's decision to require the defendant to submit to up to 104 drug tests a year might seem excessive, it is not plain error. Ms. Guy brings to our attention cases in which courts have justified additional drug testing by relying on the defendant's prior drug use. *United States .v. Simmons,* 130 F.3d 1223, 1224 (7th Cir.1997); *United States v. Elwell,* 984 F.2d 1289 (1st Cir.1993). However, those cases do not require that a district court only impose testing on individuals with extensive drug histories. As noted above, *Schechter* gives a district court broad discretion to impose special condi-

tions of supervised release. 13 F.3d at 1118. Here, in an effort to make sure that this youthful offender walks the straight-and-narrow on supervised release, the district court used its broad discretion. It authorized the probation office to test Ms. Guy for illegal narcotics use up to twice a week for the pendency of her time on supervised release. If the probation office believes that such tests are unnecessary based on its first-hand observations of the defendant, it is uniquely well positioned to cut back on, or totally cease, further testing.

### D.

For the reasons stated above, the decision of the district court is AFFIRMED.

---

1. In her reply brief, the defendant charges that by not setting a specific number of tests, the district court violated *United States v. Bonanno,* 146 F.3d 502, 510–11 (7th Cir.1998). *Bonanno* held that a district court may not leave the number of drug tests a defendant must submit to completely to the discretion of the probation office. *Id.* Without addressing the merits, we note that arguments which were neither raised below nor in an opening brief are forfeited. *United States v. Lezine,* 166 F.3d 895, 904 (7th Cir.1999).