NOT RECOMMENDED FOR FULL TEXT PUBLICATION
File Name: 20a0585n.06

No. 19-4155

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE NORTHERN DISTRICT OF |
| ERIC DANIEL BURROWS, | ) | OHIO |
| | ) | |
| **Defendant-Appellant.** | ) | **OPINION** |
| | ) | |
| | ) | |

**FILED**

Oct 16, 2020

DEBORAH S. HUNT, Clerk

BEFORE: CLAY, GIBBONS, and NALBANDIAN, Circuit Judges.

**NALBANDIAN, Circuit Judge.** Eric Burrows pled guilty to receiving, accessing with intent to view, and possessing child pornography. His Sentencing Guidelines range was 97 to 121 months in prison. The district court sentenced him to 97 months. Burrows appeals, arguing that his sentence is substantively unreasonable. Because the sentence is reasonable and the district court didn't abuse its discretion, we **AFFIRM**.

I.

A.

In 2012, Homeland Security Investigations began to investigate a fee-based website called "Website M," which sold child pornography. The website required users to have a username and password before they could use it. But once users set these up, they could purchase passwords for

folders containing images and videos of child pornography and child erotica. After a user paid for a password, the website automatically emailed the user with the password to access the folder.

During its investigation into Website M, Homeland Security analyzed payment processor records associated with the website and identified users who made multiple purchases from the site. Through this and other investigation, Homeland Security determined that Eric Burrows bought several files from Website M between 2017 and 2018.

Based on this evidence, federal agents executed a search warrant at Burrows's car repair shop in Elyria, Ohio. During the search, they discovered two devices with child pornography containing nearly 10,000 images of child abuse material, including fifty-two videos. Among the images and videos Burrows bought were naked prepubescent girls performing various sex acts on themselves. Multiple involved adult men performing sex acts on toddlers. Others featured prepubescent girls whipping or pretending to choke themselves. Many displayed the girls' genitals. The devices also contained another 167,713 images of child exploitative material.

In an interview with federal agents, Burrows admitted that the email address associated with the Website M purchases was his and that no one else had access to it. Still, Burrows at first denied buying and viewing child pornography. But when the interviewing agent pressed him, he changed his tone, claiming that he "didn't think it was porn" and "didn't look at it as porn"—"it" referring to "naked images of young women." (R. 25, Presentence Investigation Report, PageID # 177.) And Burrows then volunteered to the agent that the age of consent was "like 15, 16 years old. Not that I've ever had sex with a child, but anyways. Just throwing it out there." (*Id.*) When the agent asked Burrows about the youngest child he saw in naked images, Burrows replied that he thought his purchases might've included some nine- or ten-year-old children by mistake. (*Id.*) That ended the interview—Burrows asked for a lawyer shortly after.

B.

A federal grand jury indicted Burrows. The indictment charged three violations of federal law: receipt of visual depictions of real minors engaged in sexually explicit conduct; accessing child pornography with intent to view; and possession of child pornography. *See* 18 U.S.C. §§ 2252(a)(2), 2252A(a)(5)(B). Burrows pled guilty to all three counts. Under the Federal Sentencing Guidelines, Burrows's base offense level was 22. *See* U.S.S.G. § 2G2.2. This level fell to 20 because Burrows didn't distribute or traffic in child pornography.

But Burrows's offense level increased to 33 based on four § 2G2.2 factors: (1) the material Burrows bought involved a prepubescent minor under the age of twelve; (2) the material portrayed sadistic or masochistic conduct and sexual abuse and exploitation of a toddler; (3) Burrows used a computer to possess the material; and (4) Burrows had nearly 10,000 images and fifty-two videos. *See* U.S.S.G. § 2G2.2. After Burrows accepted responsibility, his offense level was 30, and the guideline range for his sentence was 97 to 121 months.

The district court sentenced Burrows to a within-Guidelines sentence of 97 months, at the bottom of the range. The court noted that other courts, focusing on the traits of child-pornography defendants, have imposed below-Guidelines sentences. (R. 34, Sentencing Tr., PageID # 300.) But that perspective was "seriously misguided" in the court's eyes because it didn't focus enough on how child pornography affects victims and the public. (*Id.*) And in the court's opinion, Burrows didn't "understand, fully understand, that this is serious in nature and this conduct is the kind of conduct that must be obviously deterred." (*Id.* at PageID # 302.)

The district court also noted that it had reviewed the sentencing memoranda submitted by the government and defense. These included several empirical studies offering differing views about the dangers that offenders like Burrows, who "feed the market" for child pornography, pose.

(*Id.*)  And the court observed that Burrows "sought out" the pornography, which included videos (one forty-eight minutes long) and contained images of "infant, toddler-aged children" and children engaged in sadistic and masochistic violence.  (*Id.* at 301.)  Finally, the court found that Burrows was less than truthful in his interview with federal agents, at first claiming he didn't view child pornography, then claiming not to think of the images as pornographic.

Burrows now appeals his sentence.  He argues that it was "greater than necessary" to achieve federal sentencing purposes.  (Appellant Br. at 23.)  He also argues that the Federal Guidelines fail to distinguish offenders by their level of culpability, and that the district court relied too heavily on Burrows's interview with federal agents and too little on his age.  Ultimately, he thinks the district court erred by not applying a downward variance and sentencing him to 60 months in prison—the statutory minimum.  Because the district court's sentence is reasonable and well within the court's broad discretion, we affirm.

II.

"[A]ppellate review of sentencing decisions is limited to determining whether they are 'reasonable.'"  *Gall v. United States*, 552 U.S. 38, 46 (2007).  We review whether a sentence was reasonable under an abuse-of-discretion standard.[1]  *Id.*  "A sentence may be substantively unreasonable where the district court selects the sentence arbitrarily, bases the sentence on

---

[1] Burrows purports to attack both the procedural and substantive reasonableness of his sentence. But he presents no arguments that go to *procedural* unreasonableness.  He doesn't claim that the district court improperly calculated his guideline range, treated the Guidelines as mandatory, failed to consider the § 3553(a) factors, based his sentence on clearly erroneous facts, or failed to explain the sentence. *See Gall*, 552 U.S. at 51 (laying out the factors for a procedurally unreasonable sentence).  Burrows's argument is that his sentence is too long, given his age and other factors, and that the district court placed too much weight on his conflicting statements during his interview with federal agents.  That's a claim of substantive unreasonableness. *See United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018) (describing substantive unreasonableness as when "the court placed too much weight on some of the § 3553(a) factors and too little on others in sentencing the individual").  So we review his sentence for substantive unreasonableness only.

4

impermissible factors, fails to consider pertinent § 3553(a) factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Carter*, 510 F.3d 593, 601 (6th Cir. 2007) (quotations and alterations omitted). "In reviewing the sentence's substantive reasonableness, we consider 'the length of the sentence and the factors evaluated ... by the district court in reaching its sentencing determination,'" affording due deference to the district court's decision. *United States v. Cunningham*, 669 F.3d 723, 733 (6th Cir. 2012).

"A claim that a sentence is substantively unreasonable is a claim that a sentence is too long." *United States v. Rayyan*, 885 F.3d 436, 442 (6th Cir. 2018). But substantive reasonableness isn't a matter of mathematical exactitude, so we're "highly deferential" to the district court's reasoned discretion. *Id.* And "[a] sentence that falls within a properly calculated guideline range is afforded a rebuttable presumption of reasonableness." *United States v. Brogdon*, 503 F.3d 555, 559 (6th Cir. 2007). Thus, "it is incumbent upon the defendant" sentenced to a within-Guidelines sentence "to demonstrate that his sentence is unreasonable." *Id.* This burden is a heavy one for Burrows, whose sentence is at the lowest end of his Guidelines range. *See Cunningham*, 669 F.3d at 733.

Burrows fails to carry that burden. To start, Burrows's sentence fell within the Guidelines range, so we presume that it's reasonable. *Brogdon*, 503 F.3d at 559. Burrows makes several arguments about why his sentence is unreasonable. We've seen and rejected these arguments in the past, and we do so again here.

Let's start with Burrows's claim that the district court should've granted a downward variance because a majority of other "defendants with similar records" received below-Guidelines sentences. (Appellant Br. at 30.) To be sure, uniformity among similarly situated defendants is an important consideration in sentencing. *See* 18 U.S.C. § 3553(a), (a)(6) ("The court, in

determining the particular sentence to be imposed, shall consider . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."). But Burrows's argument here is unconvincing. For starters, "[n]ational uniformity is generally taken into account by the Sentencing Guidelines." *United States v. Rossi*, 422 F. App'x 425, 435 (6th Cir. 2011) (quoting *United States v. Simmons*, 501 F.3d 620, 626 (6th Cir. 2007)). And the Guidelines are the best evidence of national sentencing practices. *United States v. Pendygraft*, 782 F. App'x 424, 428 (6th Cir. 2019). So when the district court here properly calculated Burrows's Guidelines range and applied a sentence in that range, "it necessarily [took] steps to avoid a national disparity." *Id.* (quoting *United States v. Frazier*, 547 F. App'x 729, 737 (6th Cir. 2013)).

Burrows, then, is asserting that the district court erred by not deviating from the Guidelines. He wanted the district court to impose a below-Guidelines sentence of 60 months. But *varying* from the Guidelines presents a "formidable task" for a district court. *United States v. Bistline*, 665 F.3d 758, 764 (6th Cir. 2012). It requires the court to break with the empirical and value judgments Congress made in designing the Guidelines. *Id.* And "[i]f that is true, a district court cannot be said to have abused its discretion merely because it *followed* § 2G2.2 (and agreed with its policies)." *United States v. Lynde*, 926 F.3d 275, 280–81 (6th Cir.), *cert. denied*, 140 S. Ct. 326 (2019). A district court, in other words, may rely on the Guidelines and § 2G2.2 enhancements— which the district court did here. *Cunningham*, 669 F.3d at 733. This wasn't an abuse of discretion.

Burrows also argues that Congress's assumptions underlying the Guidelines aren't supported by the evidence. Indeed, the Sentencing Commission itself has criticized them before Congress. According to Burrows, the Guidelines stem from the belief that those who view child

pornography are really child molesters—and the data doesn't support this. So Burrows "is not the dangerous offender Congress envisioned." (Appellant Br. at 26.) Putting aside whether Burrows's argument is true, "Congress's long and repeated involvement in raising the offense levels for § 2G2.2 makes clear that the grounds of its action were not only empirical, but retributive—that they included not only deterrence, but punishment." *Bistline*, 665 F.3d at 764. That's because Congress recognizes "that child pornography is a serious crime." *United States v. Schrank*, --- F.3d ----, No. 19-5903, 2020 WL 5511980, at *2 (6th Cir. Sept. 14, 2020).

Burrows simply disagrees with the policy decisions Congress made when it crafted the Sentencing Guidelines. And he tries to shoehorn this disagreement into a claim of substantive unreasonableness. But we've "repeatedly rebuffed claims that courts must decline to follow § 2G2.2 because it arose from too much democratic tinkering by Congress and not enough empirical research by the Sentencing Commission." *Lynde*, 926 F.3d at 278. Indeed, "[t]his kind of policy disagreement . . . is not sufficient by itself to demonstrate the district court abused its discretion by arbitrarily selecting his sentence." *United States v. Souders*, 747 F. App'x 269, 274 (6th Cir. 2018).

Burrows's remaining arguments are also unpersuasive. He points to a handful of district court judges who sentenced child pornography offenders less harshly than he was or stated their disagreement with the Guidelines. But we've previously "criticized the comparison of the defendant's sentence to those imposed in other singular cases as weak evidence" to show a sentence disparity. *Rossi*, 422 F. App'x at 435. Besides, the district court noted these judges' opinions. It viewed them as "seriously misguided" because they don't focus enough on how child pornography affects its victims and the public. (R. 34, Sentencing Tr., PageID # 300.) This was well within the district court's discretion. That one district court disagrees with and rejects a

Guideline's policy doesn't mean another court must do the same. *See United States v. Brooks*, 628 F.3d 791, 800 (6th Cir. 2011).

Burrows also claims that he's the least culpable kind of child pornography offender because he didn't create or distribute any material or molest any children. But it makes little sense for Burrows to try to justify a more lenient sentence on these grounds. "Just as the federal sentencing laws impose greater sentences upon sellers of controlled substances than upon those who are caught possessing such substances, … the federal child sexual offense laws do so as well." *United States v. Camiscione,* 591 F.3d 823, 834 (6th Cir. 2010). In other words, the Guidelines already considered these factors in adjusting Burrows's offense level and setting his sentence range. *See United States v. Robinson*, 669 F.3d 767, 777–78 (6th Cir. 2012).

Finally, Burrows argues that the district court relied too heavily on his statements to investigators and not enough on his age. This is wrong. The district court explicitly noted Burrows's age in sentencing him. (R. 34, Sentencing Tr., PageID # 299.) But the court also noted that Burrows paid for the pornography in multiple, distinct digital packages, possessed images and videos of toddlers and children under twelve being sexually abused, and possessed those images in large numbers. And the district court felt that Burrows didn't appreciate the gravity of his actions. When, as here, the district court considers and weighs the relevant factors, the defendant bears a heavy burden to show that the court gave an unreasonable amount of weight to any given one. *United States v. Thomas*, 395 F. App'x 168, 174 (6th Cir. 2010). So we reject Burrows's argument that the district court didn't give his age enough weight. That argument was, like all Burrows's other arguments, "fully before the district judge, and . . . expressly noted and considered before being rejected." *Id.* (quotations omitted). Burrows's "contention that his age deserves greater weight and mandates a . . . reduction fails to overcome the presumption of reasonableness."

*United States v. Martin*, 722 F. App'x 435, 438 (6th Cir. 2018).  We decline to second guess the district court's reasoned and articulate weighing of the relevant sentencing factors.

III.

"The district court properly considered the sentencing factors, balanced them, and imposed a reasonable sentence."  *United States v. Holland*, 799 F. App'x 380, 387 (6th Cir. 2020).  Our job isn't to replace the district court's judgment with our own, but to ensure the district court remains within its wide berth of reasoned discretion.  Just because Burrows didn't get the sentence he wanted doesn't mean that the district court abused its discretion.

We **AFFIRM**.